369 A.2d 1216
**Grace A. SALZMAN, Appellant,**
v.
**Lloyd H. MILLER and Mary V. Miller,**
**Added Defendant.**

Supreme Court of Pennsylvania.

Argued Jan. 20, 1976.

Decided Feb. 28, 1977.

James P. Coho, Lancaster, for appellant.

No appearance for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY and MANDERINO, JJ.

## OPINION

POMEROY, Justice.

This is an appeal from a final decree in equity which ordered specific performance of an agreement for sale of real property.[1]

In July 1968, appellant and her late husband entered into a written lease agreement with appellee Lloyd H. Miller[2] for the property which is the subject of this suit.[3] The term of the lease was one year, with an op-

---

1.  The final decree was appealed directly to this Court pursuant to § 202(4) of the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, No. 223, Art. II, § 202(4), 17 P.S. § 211.-202(4) (Supp.1976). The appeal was taken before jurisdiction of such equity decrees was transferred to the Superior Court. *See* Pa.R.A.P. 702(b), superseding Supreme Court Rule 73, effective April 17, 1975.

2.  Mr. Miller's wife, Mary V. Miller, did not sign the lease agreement.

3.  The chancellor, pursuant to Pa.R.Civ.P. 227, *sua sponte* added Mrs. Miller as an additional defendant when it developed at trial that the Millers had received a deed to the property naming both Millers as grantees as tenants by the entireties. Neither Mr. Miller nor Mrs. Miller filed a brief or appeared for oral argument before this Court. We proceeded, however, pursuant to former Supreme Court Rule 30, now Pa.R.A.P. 2314.

tion to purchase within two years. The agreement also provided that the optionees, if they exercised the option, would accept a deed for the property from one Everett McDonald. At the time he entered into this lease-option agreement, Mr. Miller had in his possession a deed to the property in question which was signed by Everett McDonald and his wife. The space in the deed for the grantee's name, however, was blank, and the deed apparently was not acknowledged. In January, 1969, appellant or her late husband orally communicated to Mr. Miller their desire to exercise the option, and this communication was orally acknowledged by Mr. Miller. Thereafter, Mrs. Salzman or her husband made several attempts to arrange for settlement, but Miller either refused or neglected to fix a date. In February, 1973, Mr. and Mrs. Miller received a second deed to the property from the McDonalds.[4] This deed named the Millers as grantees as tenants by the entireties, and was subsequently recorded.

Appellant commenced the present action for specific performance of the lease-option agreement in September, 1973. The final decree ordered the Millers to convey the property to appellant, but subject to Mrs. Miller's "inchoate intestate rights."[5] On this appeal, appellant argues that Mrs. Miller had no intestate rights in the prop-

4. Mr. McDonald and his wife had apparently been divorced, and the pleadings indicate that this deed was by Mr. McDonald and his former wife, then Bernice Crist. The deed itself is not in the record.

5. In his decree *nisi* the chancellor directed the Millers to execute and deliver a deed of conveyance to appellant for the property in question. No mention was made of Mrs. Miller's inchoate intestate rights. Following the decree *nisi*, Mr. Miller discharged his counsel and filed in the lower court a "Notice of Appeal" which the court chose to treat as exceptions to the decree *nisi*. None of Mr. Miller's "exceptions" raised the issue of his wife's intestate rights, and Mrs. Miller took no action on her own behalf. All of these "exceptions" were dismissed, but the court *sua sponte* raised the issue of Mrs. Miller's intestate rights, and in its final decree ordered that the property be conveyed to appellant subject to those rights.

erty, and therefore the trial court should have ordered that the conveyance to appellant be free and clear of all encumbrances.

In concluding that the property here at issue should be conveyed subject to Mrs. Miller's "inchoate intestate rights," the lower court reasoned as follows:

> "The deed in question [deed of February, 1973 from McDonald and his former wife naming the Millers as tenants by the entireties] was executed and delivered after execution of the lease-option agreement, the latter being entered into at a time when defendant, Lloyd H. Miller, did not have title to the property . . . . The fact that Lloyd H. Miller did not have title to the property when he signed the lease-option agreement is immaterial under the doctrine of estoppel by deed. However, his having taken title in his and his wife's name as tenants by the entireties requires that Mary V. Miller, his wife, execute the deed to plaintiff for the purpose of passing the title; but since the lease-option agreement was not signed by the wife, her inchoate intestate interest is not affected. . . ."

■■ For several reasons we believe the trial court's reasoning is erroneous. First, as the quoted portion of the opinion indicates, in applying the doctrine of estoppel by deed the court gave effect to the second deed naming the Millers as grantees holding as tenants by the entireties. It is clear, however, that Mrs. Miller could not obtain any "intestate" rights by virtue of this deed. If Mrs. Miller had any interest in the property, it was by virtue of being a tenant by the entireties. It is fundamental that in a tenancy by the entireties, each spouse owns the entire estate as long as both are living. *Gasner v. Pierce*, 286 Pa. 529, 134 A. 494 (1926). The survivor continues to hold not as a new estate, but as a continuation of the previous one. *Porobenski v. American Alliance Ins. Co.*, 317 Pa. 410, 176 A. 205 (1935).

Second, and more importantly, if any effect is to be given to the deed naming the Millers as grantees holding as tenants by the entireties, then the trial court erred in decreeing specific performance. As already noted,[6] Mrs. Miller did not sign the lease-option agreement. Nor is there any evidence in the present record which indicates that she was aware of the transaction with the Salzmans, acquiesced in it, or in any way ratified it. We have held that a husband's attempt to alienate or encumber an estate by the entireties absent his wife's joinder violates the Statute of Frauds and is unenforceable against the wife. *Del Borrello v. Lauletta*, 455 Pa. 350, 317 A.2d 254 (1974); *Schweitzer v. Evans*, 360 Pa. 552, 63 A.2d 39 (1949). Thus, unless an estoppel theory were applied to divest Mrs. Miller of her interest in the entireties property, a course of action eschewed by this Court in the past, see *Del Borrello, supra; Polka v. May*, 383 Pa. 80, 118 A.2d 154 (1955); *Peterson v. Chandler*, 362 Pa. 102, 66 A.2d 284 (1949), specific performance could not be granted if effect is given to the deed to the entireties.

While we have concluded that the trial court's reasoning is incorrect, it does not necessarily follow that its final decree was incorrect. Resolution of the case depends upon (1) the effect, if any, which should be given to the blank deed held by Mr. Miller, and (2) the effect, if any, which should be given to the second deed naming the Millers as grantees holding as tenants by the entireties. After having reviewed the record, we are convinced that these issues cannot be resolved properly without more information than is presently in evidence.[7]

---

6. See note 2 *supra.*

7. Without intending to limit in any way the scope of the hearings on remand, the following matters, suggest themselves as pertinent areas of inquiry:

(1) What was Mr. Miller's exact interest in the property in question at the time he entered into the lease-option agreement with appellant and her late husband? Although the trial court

We thus hold that neither the reasoning of the trial court nor the evidence of record supports its decree, and that there are undisclosed and unresolved facts, some of which we have adverted to, which must be established before the rights of the parties to this suit can be intelligently ascertained and adjudicated.

The decree is vacated and the case remanded for further proceedings consistent with this opinion. Each party to pay own costs.

MANDERINO, J., concurs in the result.

ROBERTS, J., filed a dissenting opinion in which JONES, C. J., joins.

NIX, J., took no part in the consideration or decision of this case.

concluded that Mr. Miller had no title to the property when he entered into the lease-option agreement, the chancellor made no specific finding of fact to that effect. While it is clear that Mr. Miller was not the record owner and did not have legal title to the property, there is evidence in the record which suggests that he might have been the equitable owner of the premises. (For example, Mr. Miller apparently received the blank deed from the McDonalds in return for assuming the McDonalds' mortgage payments; also, Mr. Miller's answer to the complaint alleges that the Salzmans knew or should have known that he was the actual owner of the premises, "since the situation was fully explained to them" before the lease-option was entered into.)

(2) Related to the first question is the question of why the first deed from McDonald to Miller was in blank as to grantees, and seemingly unacknowledged; what was the intention of the parties to that transaction? Was it intended that Mr. Miller alone was to be the owner of the premises? These questions, in turn, raise the question of the nature of the relationship between the McDonalds and Mr. Miller (and/or his wife). There is evidence in the record which suggests that Mr. Miller may have been an agent for the McDonalds. (For example, the provision in the lease-option agreement that the Salzmans would accept a deed from Everett McDonald; Mr. Miller's testimony (a) that he did not have title in his name and that "the McDonald's [sic] could have done anything to the property at this time" [Deposition of Lloyd H. Miller at 15]; (b) that the McDonalds were the record owners when he entered the agreement with the Salzmans [Deposition of Lloyd H. Miller at 16]; (c) that he had authority from the McDonalds to sell the property and that he was to take care of it for them [Deposition of Lloyd H. Miller at 18–19].)

ROBERTS, Justice, dissenting.

I dissent, and would affirm the Chancellor's decree.

In 1969, appellant and her late husband exercised an option to purchase real property under a lease agreement with appellee Lloyd H. Miller. At the time the option was exercised, Mr. Miller had in his possession a deed to the property, signed by Everett McDonald and his wife, with the grantee's name in blank. In 1973, Mr. Miller and his wife, Mary V. Miller, received a deed to the property, in tenancy by the entireties, from the McDonalds.

In this action for specific performance, the Chancellor decreed specific performance of the agreement to sell the property, subject to the intestate share of Mrs. Miller.

If Mr. Miller acquired title to the property by virtue of the deed in blank, then appellant is entitled to specific performance. Since Mrs. Miller did not sign the lease agreement, however, any conveyance would still be subject to her intestate rights.[1]

If, on the other hand, Mr. Miller did not acquire any title to the property until the 1973 deed to him and his wife, as tenants by the entireties, Mrs. Miller has a far greater interest in the property.[2] Since Mrs. Miller has not appealed from the Chancellor's decree, however, she is entitled only to her intestate rights, as decreed by the Chancellor.

Thus, I see no need to remand to the Chancellor to determine whether Mr. Miller had title at the time the option to purchase was exercised, for I would affirm the Chancellor's decree whether or not Mr. Miller had title at that time.

JONES, C. J., joins in this dissenting opinion.

1. See 20 Pa.C.S.A. § 2105(a) (1975).

2. If Mr. and Mrs. Miller had title as tenants by the entireties, her interest would include the right to succeed to the entire estate if her husband predeceased her. See *Del Borrello v. Lauletta*, 455 Pa. 350, 317 A.2d 254 (1974).