2022 PA Super 218

| | | |
|---|---|---|
| NANCY A. WYKEL | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WILLIAM N. KNAPP A/K/A WILLIAM | : | No. 2185 EDA 2021 |
| A.N. KNAPP AND U.S. BANK TRUST | : | |
| NATIONAL ASSOCIATION, AS | : | |
| TRUSTEE OF THE CHALET SERIES III | : | |
| TRUST | : | |

Appeal from the Order Entered October 16, 2021
In the Court of Common Pleas of Chester County Civil Division at No(s):
2020-03823-RC

BEFORE:  BOWES, J., STABILE, J., and McLAUGHLIN, J.

OPINION BY McLAUGHLIN, J.:                    **FILED DECEMBER 20, 2022**

Nancy A. Wykel ("Wife") appeals from the order entering judgment in favor of U.S. Bank Trust National Association, as Trustee of the Chalet Series III Trust ("U.S. Bank"). The order directed that the mortgage at issue, held by U.S. Bank, would continue to encumber Wife's interest in the subject property. We affirm.

This case involves Wife's quiet title action and U.S. Bank's counterclaim, regarding whether U.S. Bank's mortgage is defective because Wife did not sign it. The following recitation of facts is taken from the trial court's factual findings, which Wife does not challenge. Wife married William N. Knapp ("Husband") in 2000. Thereafter, in February 2001, Husband conveyed a

home in Kennett Square, Pennsylvania ("Property"), to himself and Wife as tenants by the entireties. In 2002, both Husband and Wife executed a mortgage against the Property ("2002 mortgage").

Husband refinanced the Property on April 14, 2004, by executing a mortgage in favor of World Savings Bank ("Refinanced Mortgage"). Wife did not sign the documents securing the Refinanced Mortgage. The documents referred to Husband as "William A. Knapp, A married man." The proceeds of the Refinanced Mortgage were used to pay off the 2002 Mortgage. At the time Husband executed the Refinanced Mortgage, Husband handled the couple's finances.

Husband and Wife then obtained a home equity loan in July 2004, secured by a mortgage to Countrywide Home Loans ("Countrywide Mortgage"). In the Countrywide Mortgage documents, both parties acknowledged that this new mortgage was subordinate to the Refinanced Mortgage. Countrywide Mortgage at ¶ g. Later that year, the couple moved to another home and rented the Property.

Husband continued making payments on the Refinanced Mortgage until February 2016, when he defaulted. The couple divorced in April 2016. On August 23, 2017, Wells Fargo Bank (World Savings Bank's successor in interest) filed a quiet title action seeking to reform the Refinanced Mortgage to include Wife. In June 2019, U.S. Bank became Wells Fargo's successor in interest to the Refinanced Loan, and the court dismissed the suit.

Wife then instituted this action in June 2020, to quiet title against U.S. Bank. U.S. Bank filed a counterclaim containing three counts, two of which are relevant here. One count sought to quiet title and asserted the "entireties presumption," which sets up a presumption that when a spouse takes action regarding marital property titled as a tenancy by the entireties, the spouse has acted on behalf of both spouses. U.S. Bank's Answer and Counterclaim at 7 (unpaginated); R.R. 57a. As relief, this count sought a declaration that the subject mortgage was perfected at the time of recordation, as a valid lien against both Wife's and Husband's interests in the Property as tenants by the entireties.

Another count alternatively sought reformation of the mortgage. It asserted that "the Mortgage was not executed by [Wife] as the result of a mistake on the part of the parties to the transaction and/or the title agent which closed the transaction." U.S. Bank's Answer and Counterclaim at 8 (unpaginated); ¶ 59; R.R. 58a. This count sought a reformation of the mortgage to render it a valid lien encumbering both spouses' tenancy by the entireties interests.

The trial court conducted a trial in July 2021, at which Wife and a representative of U.S. Bank testified. Following trial, the trial court applied the entireties presumption and declared that the Refinanced Mortgage "remain[ed] a lien against the entire" Property. Decision, entered 7/13/21, at 8. Wife filed a motion for post-trial relief, which the trial court denied after

oral argument.[1] Wife filed the instant timely appeal and both the trial court and Wife complied with Pa.R.A.P. 1925.

Wife raises the following issues on appeal, which we have reordered for ease for disposition:

1) Whether the trial court below erred in applying the "entireties presumption" where [Wife], the non-executing spouse to the [Refinanced Mortgage] did not consent to the mortgage or execute it as required by the Statute of Frauds?

2) Whether the trial court below erred in equitabl[y] reforming a mortgage in violation of the rule set forth by the Supreme Court of Pennsylvania's decision in *Regions Mortgage, Inc. v. Muthler* that limits reformation to mistake, accident, fraud or bad faith?

3) Whether the trial court below erred in applying the doctrine of equitable subrogation where the original lender volunteered to lend the funds without [W]ife's execution of the mortgage and application of the doctrine would be substantially unjust to [Wife]?

4) Whether the trial court below erred in failing to apply the doctrine of laches to bar equitable reformation of a 17-year[-]old mortgage or applying the four[-]year statute of limitations for unjust enrichment and/or the six[-]year statute of limitations for a quiet title action?

Wife's Br. at 3.

In her first issue, Wife argues that the court erred by applying the "entireties presumption" and thereby concluding that Husband acted on behalf of Wife when executing the Refinanced Mortgage. Wife makes what is essentially a public policy argument that the entireties presumption is antiquated and allows spouses to act for each other without the other's knowledge. She argues that the statute of frauds should preclude the

---

[1] Following oral argument, the trial court granted Wife's motion to dismiss Husband as a party in this case.

- 4 -

application of this doctrine because the non-participating spouse's interest in real property is affected without that spouse's assent in writing.

When reviewing a judgment rendered after a bench trial, we determine "whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law." **Bank of N.Y. Mellon v. Bach**, 159 A.3d 16, 19 (Pa.Super. 2017) (quoting **Stephan v. Waldron Elec. Heating and Cooling LLC**, 100 A.3d 660, 664-65 (Pa.Super. 2014)). We give a judge's findings of fact the same weight and effect on appeal as a jury verdict, and we consider the evidence in a light most favorable to the verdict winner. **Id**. We reverse the court's factual findings only if the record does not support them or if the court based them on an error of law. **Id**. However, as to questions of law, our standard of review is *de novo*, and our scope of review is plenary. **Id**.

A tenancy by the entireties exists when property, either real or personal, is held jointly by a married couple. **Clingerman v. Sadowski**, 519 A.2d 378, 380-81 (Pa. 1986). "Neither spouse in a tenancy by the entireties may independently appropriate property to his or her own use to the exclusion of the other, and neither spouse, acting independently, may sever the estate by, for example, conveying part of the property away." **Id.** (citations omitted).

This form of ownership gives rise to the "entireties presumption," which provides that, "with respect to properties held by the entireties" during the marriage, "either spouse has the power to act for both without specific authority, so long as the benefits of such action inure to both." **J.R. Christ**

***Constr. Co. v. Olevsky***, 232 A.2d 196, 199 (Pa. 1967). The entireties presumption can be rebutted by establishing, by a preponderance of the evidence, that a spouse did not have the other spouse's tacit authority to act on both spouses' behalf. ***Id.***

In this case, the trial court properly considered Wife's testimony when concluding that the entireties presumption applied:

> [Wife] deferred to [Husband] on matters concerning the family's finances, including the mortgage at issue. [Wife] benefited from the mortgage as the proceeds repaid a prior mortgage on which she was obligated. The tenancy was not severed when [Husband] refinanced the existing joint mortgage. Given these circumstances, the presumption supplies implied authority that [Husband] was acting on [Wife's] behalf. To overcome this presumption, [Wife] was required to establish, by a preponderance of the evidence, that [Husband] did not have her tacit authority to refinance the property, which she failed to do.

Trial Court Order, entered 10/15/21, at n.1 (citations to record omitted).

We discern no error. The benefit of the Refinanced Mortgage inured to Wife as her obligation on a prior mortgage was thereby extinguished. ***See J.R. Christ***, 232 A.2d at 199. Further, the trial court, as factfinder, was well within its purview when finding that Wife's testimony failed to establish that she opposed the Refinanced Mortgage and that Husband did not have her authority to execute the mortgage document. ***Id.***

Wife also raises the issue of the application of the statute of frauds in cases involving the entireties presumption. She contends that the presumption cannot apply where only one spouse signed the mortgage. The trial court cited ***Deutsche Bank National Trust Co. v. Evans***, 421 B.R. 193,

200 (W.D. Pa. 2009), and concluded that the statute of frauds did not preclude the application of the entireties presumption where Wife "does not contend that there was perjury or fraud in the transaction at issue and none is evident." **See** Trial Ct. Order at n.1.

The trial court did not err in its reconciling of the statute of frauds with the entireties presumption. "The entireties presumption can render a mortgage enforceable even though only one spouse actually executed the mortgage." **Wells Fargo Bank, N.A. v. Carnell**, No. 3:16-cv-130, 2018 WL 2994393, at \*7 (W.D. Pa. 2018) (citation and internal quotation marks omitted)). In the case the trial court cited, **Evans**, the court faced a similar question as the trial court faced here: whether a husband could grant a mortgage on marital property without the wife's signature. The federal district court found that he could, and rejected the husband's and wife's reliance on the statute of frauds. The court explained that "[w]here perjury or fraud is impossible, there is no room for the statute." **Evans**, 421 B.R. at 199 (quoting **Schuster v. Pa. Turnpike Comm'n**, 149 A.2d 447, 451 n.11 (Pa. 1959)). Accordingly, the court concluded that where a party asserts the statute of frauds as a defense against the entireties presumption, the proper analysis requires "(1) a determination of whether the entireties presumption is properly applicable; and (2) if so, a determination that the specific application

of the entireties presumption complies with the purpose and policies of the

[s]tatute of [f]rauds." *Id*.[2]

---

[2] Wife contends that "an array of Federal cases applying Pennsylvania real property law" contradict **Evans**. Application of Appellant Nancy A. Wykel for Reargument *En Banc*, filed Oct.14, 2022, at 6. However, we find **Evans** persuasive and the cases cited by Wife to be distinguishable and/or inapposite. In **Herb v. Citimortgage, Inc.**, 955 F.Supp.2d 441, 448-50 (M.D. Pa. 2013), the United States District Court for the Middle District of Pennsylvania discussed the entireties presumption and statute of frauds case law and denied summary judgment because the wife had presented evidence that "she was unaware of, did not consent to, and did not authorize the mortgage, despite the benefit of the mortgage inur[ing] to both spouses." The court concluded the evidence could support findings that the wife did not know her husband took out the loan, did not consent to the mortgage, required her husband to consult with her regarding financial changes, and "someone forged her initials and signature." **Id.** at 449. The court reasoned that where it is alleged the document is forged, no agency relationship can be established, noting the evidence viewed in the light most favorable to the wife negated the premise that she authorized her husband to establish the mortgage. Here, unlike in **Herb**, Wife allowed Husband to control the finances, without consulting with her, such that he had her tacit authority to enter into the mortgage, and there is no allegation of forgery.

In **In re Farris**, 194 B.R. 931, 939 (Bankr. E.D. Pa. 1996), the United States Bankruptcy Court for the Eastern District of Pennsylvania addressed a claim that the bank violated the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691-1691f, by requiring a wife's signature when her husband was the sole applicant for a loan. It found, among other things, that where the husband offered the marital residence as collateral for his personal loan, his wife's signature was required on the mortgage and therefore the bank did not violate ECOA by requiring the wife's signature on the mortgage. **Id.** Here, there is no ECOA claim.

Finally, in **In re Butz**, 1 B.R. 435 (Bankr. E.D. Pa. 1979), the United States Bankruptcy Court for the Eastern District of Pennsylvania found the creditor was not a secured creditor. The creditor had entered into a loan agreement with a husband where the husband offered the marital home as collateral in exchange for a loan of $3,000.00. The court found the absence of "the signature of the debtor's wife on the note and of a signed statement vesting
*(Footnote Continued Next Page)*

The **Evans** court's harmonization of the statute of frauds with the entireties presumption is sound. We should reconcile seemingly conflicting cases where possible. **See Durante v. Pa. State Police**, 809 A.2d 369, 372 (Pa. 2002) ("[I]t would be improvident to conclude that **Cunningham** overruled **Palmeri** sub silentio *unless the two are irreconcilable*." (emphasis in original)). As in **Evans**, here, Wife "does not contend that there was perjury or fraud in the transaction at issue and none is evident." **See** Trial Ct. Order at n.1; **see also Carnell**, 2018 WL 2994393, at *7. The trial court did not err by concluding that the statute of frauds did not preclude the application of the entireties presumption.

Wife's citations to **Del Borrello v. Lauletta**, 317 A.2d 254, 255 (Pa. 1974), and **Salzman v. Miller**, 369 A.2d 1216 (Pa. 1974), for the propositions that the mortgage violates the statute of frauds and that marriage does not extend general agency to a spouse for purposes of entering into a written agreement without the other's consent, also afford her no relief. The court in **Del Borrello** considered "whether an 'option to purchase' clause contained in a lease of realty is enforceable against a husband and wife holding title to the premises as tenants by the entireties, when only the now-deceased husband had signed the lease." 317 A.2d at 254-55. The Supreme Court noted the rule

---

authority in the husband to convey an interest in the real estate mandates the conclusion that the written agreement is unenforceable under both case law and the [s]tatute of [f]rauds." **Id.** at 437. There was no discussion in **Butz** of the entireties presumption or the wife's knowledge or consent regarding the loan, and it is not clear that the wife in **Butz** would have received a benefit from the loan under its terms, as Wife in this case did.

that neither spouse's independent actions may work a severance of the entireties estate. It also stated that "no general agency" relationship arises from a marriage "nor any presumption flowing therefrom that either spouse has authority to convey real estate held by the entireties without the other's joinder therein." *Id.* at 255. Applying these principles, and without any mention of the entireties presumption, the Court found the option clause unenforceable.

In **Salzman**, the plaintiff entered into a lease agreement with Lloyd Miller. Miller's wife did not sign the lease, which had a one-year term and an option to purchase the property within two years.[3] The trial court ordered specific performance of the lease agreement. The Pennsylvania Supreme Court reversed, pointing out that Miller's wife did not sign the lease-option agreement, and that there was no evidence she was aware of the transaction, acquiesced in it, or ratified it. 369 A.2d at 1218. The Court reasoned it had previously held that "a husband's attempt to alienate or encumber an estate by the entireties absent his wife's joinder violates the [s]tatute of [f]rauds and is unenforceable against the wife." *Id.* (citing **Del Borrello**, 317 A.2d at 254). As in **Del Borello**, the Court did not mention the entireties presumption.

---

[3] At the time the lease was signed, Miller had a deed to the property signed by the former owner and the former owner's wife, but the space for the grantee's name on the deed was blank. In 1969, the plaintiff communicated the desire to purchase the property, but Miller did not fix a date. In 1973, Miller and his wife received a second deed to the property from the prior owner, which named both Millers as grantees as tenants by the entireties.

Neither **Salzman** nor **Del Borrello** requires a finding of error. Just seven years before the decision in **Del Borrello**, the Supreme Court in **J.R. Christ** set forth the principles of the entireties presumption, which it has never overruled, including in **Del Borrello** and **Salzman**. Because the decisions address different rules of law, we will not find an implicit overruling. **See Commonwealth v. Johnson**, 582 A.2d 336, 339 (Pa.Super. 1990) (refusing to find a prior decision overruled *sub silentio* when cases presented different issues). The Court in **Del Borrello** and **Salzman** did not comment on the entireties presumption, while in **J.R. Christ**, it explicitly set forth the parameters for raising and rebutting the presumption, and applied them. Moreover, it appears the presumption would not have applied in **Del Borrello** or in **Salzman**, where the actions would have worked divestitures of the wives' interests and not inured to both spouses' benefits. In contrast, in the instant case, the trial court properly applied the entireties presumption because Wife was not divested of a property interest by the Refinanced Mortgage. Rather, she benefited by obtaining a refinancing of her obligations under the previous mortgage. **See Carnell**, 2018 WL 2994393, at *7. Wife's first issue warrants no relief.

In her second issue, Wife contends that this case is analogous to **Regions Mortgage, Inc. v. Muthler**, 889 A.2d 39 (Pa. 2005). In **Muthler**, the Pennsylvania Supreme Court reaffirmed prior holdings limiting the remedy of equitable reformation of a mortgage for mutual mistake to cases where the party against whom reformation is sought had "knowledge of the mistake

sufficient to justify an inference of fraud or bad faith." *Id*. at 42. Wife posits that because U.S. Bank did not establish mistake or fraud, the Refinanced Mortgage should not have been deemed to be enforceable against her as a non-signatory.

The trial court here found *Muthler* to be instantly unavailing, and we agree. While our Supreme Court in *Muthler* declined to reform a mortgage that was signed only by a husband, to include his wife, in that case the lender had unilaterally removed the wife's name from the mortgage. Most significantly, the Court in *Muthler* merely restated the law regarding mutual mistake as applied to a mortgage. It did not consider the entireties presumption. It does not appear that the parties in *Muthler* even raised the entireties presumption. Conversely, here, U.S. Bank asserted the presumption, and the trial court properly applied it to conclude that the Refinanced Mortgage encumbers Wife's interest in the Property. Therefore, Wife's second issue also lacks merit.

In light of our disposition, we need not address Wife's third issue. Wife argues that the trial court erroneously applied the doctrine of equitable subrogation as an alternative means of continuing to encumber her property with the Refinanced Mortgage. Because we hold that the trial court properly determined that the entireties presumption operates to continue Wife's obligations under the Refinanced Mortgage, we need not review the trial court's alternative basis for relief.

In her fourth and final issue, Wife presents several thinly developed claims. First, she contends that the doctrine of laches should apply because although Wells Fargo initiated this case back in 2017, assigning the mortgage to U.S. Bank delayed the matter until 2020. Wife claims that because she was divorced in 2016, this delay caused her prejudice. In addition, Wife presents the overarching contention that both the four-year statute of limitations for claims sounding in unjust enrichment and the six-year general "catch-all" statute of limitations should apply to preclude this action. She claims the breach of contract occurred when Husband defaulted on the Refinanced Mortgage in February 2016, and thus the instant action filed in 2020 should be deemed too late. Wife also maintains that the quiet title action should have accrued in 2004 when the Refinanced Mortgage was executed, so the six-year catch-all statute of limitations is also implicated.

The doctrine of laches is an affirmative defense that bars the prosecution of stale claims and is the practical application of the maxim that "those who sleep on their rights must awaken to the consequence that they have disappeared." *Fulton v. Fulton*, 106 A.3d 127, 131 (Pa.Super. 2014) (quoting *Kern v. Kern*, 892 A.2d 1, 9 (Pa.Super. 2005)). We have explained laches as follows:

> Laches bars relief when the complaining party is guilty of want of due diligence in failing to promptly institute the action to the prejudice of another. Thus, in order to prevail on an assertion of laches, respondents must establish: a) a delay arising from petitioner's failure to exercise due diligence; and, b) prejudice to the respondents resulting from the delay.

- 13 -

*Id.* (quoting *Estate of Scharlach*, 809 A.2d 376, 382-83 (Pa.Super. 2002)).

Evidence of prejudice may include evidence "that a witness has died or become unavailable, that substantiating records were lost or destroyed, or that the defendant has changed his position in anticipation that the opposing party has waived his claims." *Commonwealth ex rel. Baldwin v. Richard*, 751 A.2d 647, 651 (Pa. 2000).

In this case, the court concluded that Wife failed to demonstrate prejudice. It explained that even according to Wife's evidence, "No witness has died, no records are missing, no position has been changed in anticipation that claims had been waived." Trial Ct. Order at n.1. We discern no error. *See Fulton*, 106 A.3d at 131; *Baldwin*, 751 A.2d at 651.

Wife's related statute of limitations arguments are inadequately developed and thereby waived. Wife presents limited argument and scant legal authority, which she fails to connect to the facts of this case. *See* Pa.R.A.P. 2119(a); *Norman for Estate of Shearlds v. Temple Univ. Health Sys.*, 208 A.3d 1115, 1119 (Pa.Super. 2019) (holding claims waived "because they are undeveloped and lack citation to pertinent legal authority"). Wife fails to explain how the statute of limitations for unjust enrichment is applicable here. Wife further committed waiver by failing to include her "catch-all" statute of limitations argument in her Rule 1925(b) statement. *See* Pa.R.A.P. 1925(b)(4)(vii) ("[i]ssues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived"). Hence, Wife's last issue also fails. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>12/20/2022</u>