J-A06026-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| U.S. BANK, NATIONAL ASSOCIATION, AS TRUSTEE FOR CREDIT SUISSE FIRST BOSTON MORTGAGE SECURITIES CORP., HOME EQUITY ASSET TRUST 2006-1, HOME EQUITY PASS-THROUGH CERTIFICATES, SERIES 2006-1 | : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : | No. 882 WDA 2022 |
| v. | : : : : : : | |
| JILL MCAFEE A/K/A JILL MCFEE AND JOHN MCAFEE | : : | |

Appeal from the Judgment Entered July 14, 2022
In the Court of Common Pleas of Allegheny County Civil Division at
No(s): GD16-006717

BEFORE:   OLSON, J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY NICHOLS, J.:                **FILED:  May 16, 2023**

Appellant U.S. Bank, National Association appeals from the judgment entered in favor of Jill McAfee (Wife), a/k/a Jill McFee, and John McAfee (Husband) (collectively, Appellees) after a non-jury trial.  Appellant argues that the trial court erred by admitting evidence of title insurance at trial, declining to apply the entireties presumption and reform the mortgage on Appellees' property, and failing to impose an equitable lien on Appellees' property.  We affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

The trial court summarized the procedural history of this matter as follows:

> The subject property in this case, 212 Maplewood Drive, Pittsburgh, PA, 15214, was purchased in 2005 (the "Property"). While the deed lists the grantees as "John McAfee and Jill McAfee, husband and wife," the mortgage executed at the closing was signed only by [Wife], who was also the only person who applied for the loan used to purchase this property. By virtue of an assignment of mortgage in November 2012, [Appellant] became the owner of the mortgage.
>
> [Appellant] initiated this case in 2016 against [Appellees] as the owners of record in an action to quiet title. Following appellate review of an initial order granting summary judgment in favor of [Appellant,][FN1] [Appellant] was granted leave to amend the complaint to include a count for an equitable lien. Consistent with the initial complaint, among the relief requested in the amended complaint was a declaration that the entire Property, including the ownership interest of [Husband], was subject to the mortgage as a lien of first priority as of the date of recording on August 2, 2005. [Appellant] filed a second motion for summary judgment on September 4, 2019, seeking judgment in its favor based upon application of the entireties presumption. [Appellant's] second motion for summary judgment was denied by the Honorable Judge Joseph M. James' order dated June 23, 2020.
>
> > [FN1] By order dated June 26, 2017, the Honorable Judge Joseph M. James granted [Appellant's] motion for summary judgment, and declared the mortgage a lien of first priority against the entire Property [on the theory that Husband's omission from the mortgage was a mutual mistake]. On appeal to the Superior Court, the order was reversed. [**U.S. Bank Nat'l Ass'n for Credit Suisse First Boston Mortgage Sec. Corp., Home Equity Asset Tr. 2006-1, Home Equity Pass-Through Certificates, Series 2006-1 v. McAfee**, 1102 WDA 2017, 2018 WL 3721357, at *3 (Pa. Super. filed Aug. 2, 2018) (unpublished mem.).]

Trial Ct. Op., 9/16/22, at 2-3 (some citations omitted and some formatting altered).

On March 16, 2022, Appellant filed a motion *in limine* to exclude evidence relating to Appellant's title insurance. **See** Appellant's Mot. *in Limine*, 3/16/22, R.R. at 189a-218a.[1] Following a hearing on March 22, 2022, the trial court denied Appellant's motion and the matter immediately proceeded to a non-jury trial. N.T. Trial, 3/22/22, at 19.

The trial court summarized its factual findings as follows:

Unfortunately, [Wife] was unavailable to testify due to a medical condition and she was not deposed in the matter. However, the other witnesses with knowledge of the circumstances surrounding the loan transaction testified that [Wife] alone chose to pursue purchasing a new home and securing a loan despite [Husband] informing her that he did not want "anything to do with it." In his testimony at trial, [Husband] explained what motivated her to do so. Before purchasing this house, [Wife] was accidently mistaken by first responders as the mother of a victim in a gang related, . . . shooting that took place in Homestead, Pennsylvania. . . . Following this incident, [Wife] desired to move to the North Hills and away from Homestead. [Husband], a native of Homestead, did not want to leave.

[Husband] testified about his lack of involvement in the loan origination process and about his opposition to being involved in purchasing the home. [Husband] was not involved in the loan application process at all because as he testified, he did not want to move and "did not have anything to do with purchasing [the] property." While [Husband] was aware that [Wife] was trying to

---

[1] We may cite to the parties' initial or supplemental reproduced record for the parties' convenience.

We note that neither Appellant's reproduced record nor Appellees' supplemental reproduced record contains the proper pagination. **See** Pa.R.A.P. 2173 (providing for the format of page numbers for reproduced records). For that reason, we have added the suffix "a" when citing to Appellant's reproduced record and the suffix "b" when citing to Appellees' supplemental reproduced record. **See Petrongola v. Comcast-Spectacor, L.P.**, 789 A.2d 204, 207 n.3 (Pa. Super. 2001).

purchase a home, [Husband] did not think that [Wife] would actually purchase a house or that there would be a move. In response to a question regarding whether [Husband] told [Wife] not to take out a mortgage or buy the property, [Husband] unequivocally stated, "I told her I did not want anything to do with it, I did not want to live in this house." He also testified that he did not even expect to be listed on the deed.

The undersigned found [Husband's] testimony — that he voiced opposition to moving and to his involvement in the purchase to [Wife] — to be credible.

The plan to exclude [Husband] from the loan transaction was corroborated by David Howe, who in addition to being an employee of the ambulance service owned by [Husband], worked in the mortgage origination business in 2005. [Wife] approached Mr. Howe when she desired to move from Homestead. Mr. Howe specifically helped [Wife] to shop for banks that would lend to only one spouse and prepared the loan application only for [Wife]. He helped her fill out the application and affirmed that [Husband] was not a part of the process at any time. Mr. Howe did not prepare the final loan documents or attend the closing; once the application was submitted to the lender, his part was over.

At trial, [Appellant] called Tonya Johnson . . . who has been employed by Wells Fargo Bank, the current loan servicer, since March 12, 2012. She testified that as a loan servicer, Wells Fargo advances taxes, accepts the mortgage payments, and communicates with the borrower. Wells Fargo was not the lender at the time of closing.

As a senior loan documentation specialist, Ms. Johnson reviews and analyzes business records in preparation for court. Ms. Johnson testified about the record keeping at Wells Fargo (the loan servicer) and authenticated the business records. Ms. Johnson was not involved in the loan application process or loan closing process nor did she speak to anyone who was in preparation for her testimony.

Trial Ct. Op. at 3-6.

We add that Ms. Johnson testified that the mortgage has been in default since 2014. N.T. Trial at 59, 69. Additionally, the trial court admitted into

- 4 -

evidence a letter dated June 2, 2015 from Appellant's counsel to Appellant's title insurance carrier, in which Appellant stated that its title search indicated that Husband did not execute the mortgage. *Id.* at 66-68, S.R.R. at 131b-32b (Defendants' Exhibit 18).

On March 29, 2022, the trial court entered a verdict in favor of the Appellees. Appellant filed a timely post-trial motion seeking JNOV, or in the alternative, a new trial, which the trial court denied. Appellant subsequently filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued a Rule 1925(a) opinion addressing Appellant's claims.

Appellant raises the following issues for our review, which we reorder as follows:

1. Was the trial court's admission of evidence at trial of title insurance coverage and/or a pending title insurance claim, prejudicial error?

2. Was the trial court's apparent conclusion that the Pennsylvania entireties presumption was inapplicable as to the validity of the instant mortgage and the binding nature of same on both Appellees, unsupported by the evidence and applicable law?

3. Was the trial court's failure to impose an equitable lien on the subject Property and on the ownership interests of both Appellees thereto, unsupported by the evidence and applicable law?

Appellant's Brief at 8.

**Admission of Evidence Regarding Title Insurance**

In its first issue, Appellant argues that the trial court erred in denying its motion *in limine* to preclude admission of any evidence relating to Appellant's title insurance. ***Id.*** at 15-16. Appellant contends that evidence concerning a party's insurance coverage is generally inadmissible under Pa.R.E. 411. ***Id.*** at 15. Appellant also argues that such evidence is irrelevant and prejudicial. ***Id.*** at 15-16 (citing, *inter alia*, ***Stepanovich v. McGraw***, 78 A.3d 1147 (Pa. Super. 2013); ***Est. of Hannis by Hannis v. Ashland State Gen. Hosp.***, 554 A.2d 574, 579 (Pa. Cmwlth. 1989)). Appellant concludes that the admission of evidence related to title insurance unfairly prejudiced Appellant. ***Id.*** at 16.

With respect to evidentiary rulings, this Court has explained:

Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and we will not reverse the court's decision absent a clear abuse of discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support as to be clearly erroneous. In addition, to constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

***Crespo v. Hughes***, 167 A.3d 168, 177 (Pa. Super. 2017) (citations omitted and formatting altered).

Pennsylvania Rule of Evidence 411 provides:

Evidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully. But the court may admit this evidence for

- 6 -

another purpose, such as proving a witness's bias or prejudice or proving agency, ownership, or control.

Pa.R.E. 411.

This Court has explained that "the general rule in Pennsylvania is that evidence of insurance is irrelevant and prejudicial and justifies the grant of a mistrial. However, the mere mention of the word insurance does not necessitate a new trial unless the aggrieved party can demonstrate prejudice." **Allied Elec. Supply Co. v. Roberts**, 797 A.2d 362, 364 (Pa. Super. 2002) (**Allied**) (citations omitted and formatting altered); **see also Est. of Hannis**, 554 A.2d at 579 (explaining that "[e]vidence in personal injury action which informs the jury that **a defendant is insured against liability is inadmissible**" (citation omitted and emphasis added)).[2]

In **Stepanovich**, the plaintiff sued a defendant-driver for negligence and also sued the plaintiff's insurer, State Farm, to recover underinsured motorist benefits (UIM) in connection with the accident. **Stepanovich**, 78 A.3d at 1148. The trial court bifurcated the claims, but allowed counsel for State Farm to participate in the trial on the plaintiff's negligence claim against the defendant-driver. **Id.** at 1149-50. Further, the trial court restricted the parties from mentioning insurance or identifying State Farm as a defendant

---

[2] Decisions by the Commonwealth Court may provide persuasive authority, they are not binding on this Court. **See Maryland Cas. Co. v. Odyssey**, 894 A.2d 750, 756 n.2 (Pa. Super. 2006). Although **Est. of Hannis** predates the adoption of Rule of Evidence 411 in 1998, the Commonwealth Court's conclusion that evidence of liability insurance is inadmissible is consistent with Rule 411. **Compare Est. of Hannis**, 554 A.2d at 579, **with** Pa.R.E. 411.

during the trial. *Id.* at 1150. The jury returned a verdict in favor of the defendant-driver. *Id.* The plaintiff filed a post-trial motion seeking a new trial, arguing that "he was prejudiced by having two parties with the same interests taking an active role against him when one of the parties was not identified." *Id.* The trial court concluded that it had erred by not identifying State Farm as a defendant to the jury, that its error violated the plaintiff's procedural due process rights, and granted a new trial. *Id.*

On appeal, this Court observed:

Without specifically stating it, the trial court's resolution also recognizes by necessity that Pa.R.E. 411 does not apply to the instant situation regarding State Farm's participation in the trial. Rather, Pa.R.E. 411 prohibits the introduction of liability insurance into evidence; liability insurance is required coverage providing indemnity to the alleged tortfeasor for injuries caused to others. Underinsured motorist benefits are optional benefits purchased by a motorist for personal protection, but which do not provide indemnity to the tortfeasor. Therefore, a course of action identifying State Farm as a party would not necessarily run afoul of either Rule 411 or [the order bifurcating plaintiff's claims].

*Id.* (citations omitted).[3]

Here, the trial court addressed Appellant's claim as follows:

Although this court admitted Exhibits D-17[4] and D-18, the undersigned was not concerned with the existence of title insurance. These exhibits were admitted only along the limited

_____

[3] However, this Court reversed the grant of a new trial because the trial court's error did not prejudice the plaintiff. *Stepanovich*, 78 A.3d at 1151.

[4] Our review of the record indicates that the trial court only admitted Exhibit D-18. *See* N.T. Trial at 29, 66-68; S.R.R. at 26b (list of Appellees' exhibits admitted at trial).

lines in the ruling at [N.T. Trial at 18, 66], as probative of establishing a timeline for purposes of a laches defense. However, the court's decision was not based on the defense of laches and the court did not rely on these exhibits in rendering the non-jury verdict.

Trial Ct. Op. at 11.

Based on our review of the record, we discern no abuse of discretion in the trial court's decision to admit evidence of title insurance. *See Crespo*, 167 A.3d at 177. Under Rule 411, evidence of liability insurance is not admissible for purpose of proving a party "acted negligently or otherwise wrongfully." *See* Pa.R.E. 411. However, evidence of insurance may be admitted for another purpose. *See id.*; *accord Stepanovich*, 78 A.3d at 1150. Appellees did not present evidence of title insurance for the purpose of proving that any party acted negligently or otherwise wrongfully. Instead, Appellees offered evidence of their title insurance in support of their affirmative defense of laches. *See* N.T. Trial at 64-67. Therefore, the trial court did not abuse its discretion in admitting evidence of Appellant's title insurance claim for that purpose.[5] Accordingly, Appellant is not entitled to relief on this claim.

_____

[5] Further, the mere mention of insurance will not result in a new trial absent prejudice to the aggrieved party. *See Allied*, 797 A.2d at 364; *see also Crespo*, 167 A.3d at 177 (explaining that for an evidentiary ruling to be reversible error, it must be both erroneous and prejudicial to the complaining party). Additionally, the trial court, sitting as the fact-finder, is presumed to have disregarded prejudicial evidence. *See, e.g.*, *Commonwealth v. Fears*, 836 A.2d 52, 71 n.19 (Pa. 2003). Therefore, Appellant has failed to demonstrate how it was prejudiced by the admission of evidence of insurance.

**Entireties Presumption**

In its second issue, Appellant argues that the trial court erred by failing to apply the entireties presumption to conclude that the mortgage is a lien against the entire Property, not just Wife's interest. Appellant's Brief at 12-15. Appellant explains that in Pennsylvania, when a married couple owns property as tenants by the entireties, it is presumed that either spouse may act on behalf of both spouses regarding that property without specific authorization. *Id.* at 12. Appellant claims that the entireties presumption should apply when "any 'non-signing' spouse reaps the benefits of a mortgage on entireties-owned real estate." *Id.* (citing **Deutsche Bank Nat. Trust Co. v. Evans**, 421 B.R. 193 (W.D. Pa. 2009) (**Evans**)). Appellant contends the trial court erred when it failed to apply the entireties presumption because Husband did not rebut the entireties presumption by a preponderance of the evidence. *Id.* at 13-15 (citing, *inter alia*, **Wykel v. Knapp**, 2022 WL 4588361 (Pa. Super. filed Sept. 30, 2022)).[6] Appellant concludes that the trial court's verdict should be reversed and judgment should be entered in Appellant's

---

[6] Appellant filed its brief on October 31, 2022. Appellees respond that **Wykel** is no longer controlling because in that case, this Court granted panel reconsideration and withdrew its September 30, 2022 decision. Appellees' Brief at 19; **see also Wykel v. Knapp**, 2185 EDA 2021, 2022 WL 16958919 (Pa. Super. filed Nov. 16, 2022) (*per curiam* order). Appellees alternatively argue that even if **Wykel** were still good law, it is distinguishable from this case on the facts. Appellees' Brief at 19-20. Subsequently, this Court issued an amended opinion on December 20, 2022. **See Wykel v. Knapp**, 288 A.3d 889 (Pa. Super. 2022), which we discuss below.

favor "confirming the mortgage as a valid lien on the entire Property." ***Id.*** at 15.

> Our standard of review of a non-jury trial is well settled:
>
> > Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of the jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, where the issue concerns a question of law, our scope of review is plenary.
> >
> > The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case.
> >
> > Moreover, the trial court, as the finder of fact, is free to believe all, part[,] or none of the evidence presented. Issues of credibility and conflicts in evidence are for the trial court to resolve; this Court is not permitted to reexamine the weight and credibility determination or substitute our judgment for that of the fact finder.

***Davis v. Borough of Montrose***, 194 A.3d 597, 605 (Pa. Super. 2018) (citation omitted and formatting altered); ***see also Gutteridge v. J3 Energy Grp., Inc.***, 165 A.3d 908, 914 (Pa. Super. 2017) (*en banc*) (stating that "[w]hen this Court reviews the findings of the trial judge, the evidence is viewed in the light most favorable to the victorious party below and all evidence and proper inferences favorable to that party must be taken as true and all unfavorable inferences rejected" (citation omitted)).

It is well established:

A tenancy by the entireties is a form of co-ownership of real or personal property by husband and wife, with its essential characteristic being that each spouse is sei[z]ed *per tout et non per my*, *i.e.* of the whole or the entirety and not of a share, moiety or divisible part.

*Fazekas v. Fazekas*, 737 A.2d 1262, 1264 (Pa. Super. 1999) (citation omitted and formatting altered).

This Court has explained:

This form of ownership gives rise to the "entireties presumption," which provides that, with respect to properties held by the entireties during the marriage, either spouse has the power to act for both without specific authority, so long as the benefits of such action inure to both. The entireties presumption can be rebutted by establishing, by a preponderance of the evidence, that a spouse did not have the other spouse's tacit authority to act on both spouses' behalf.

*Wykel*, 288 A.3d at 893 (citations omitted and formatting altered); *see also Fazekas*, 737 A.2d at 1264 (stating that "[f]or the duration of the entireties estate, either spouse has the presumptive power to act for both, so long as both spouses share the proceeds" (citation omitted)).

In *Wykel*, a married couple executed a mortgage against a property which they owned as tenants by the entireties. *Wykel*, 288 A.3d at 891. A few years later, the husband refinanced the property and executed a new mortgage, but the wife did not sign any of the documents related to the new mortgage. *Id.* The couple used the funds obtained under this new mortgage, which only the husband had signed, to pay off the prior mortgage, which both

spouses had signed. *Id.* The husband and the wife subsequently divorced, and litigation ensued to determine whether the new mortgage was a valid lien against the wife's interest in the property. *Id.* at 892. The trial court held that the new mortgage was a valid lien against the entire property. *Id.* The trial court found that the wife had deferred to the husband on financial matters, including obtaining the new mortgage. *Id.* at 893. Further, the trial court held that the wife had failed to prove by a preponderance of the evidence that the husband did not have her tacit authority to refinance the property, therefore the entireties presumption applied. *Id.*

In *Evans*, a married couple took out a loan, secured by a mortgage, to purchase real property, which they took title to as tenants by the entireties. *Evans*, 421 B.R. at 195.[7] The federal district court noted that "[t]he parties agree that [the wife] had knowledge of, and consented to, the granting of the mortgage, however, she never signed either the mortgage or the promissory note. Only [the husband] signed the mortgage as mortgagor." *Id.* Because the wife had knowledge of and consented to the granting of the mortgage, the district court concluded that the entireties presumption applied. *Id.* at 197, 200.

---

[7] "Federal district court decisions offer this Court persuasive, but not binding, authority." *Bank of Am., N.A. v. Scott*, 271 A.3d 897, 910 n.6 (Pa. Super. 2022) (citation omitted). We note however, that this Court has cited *Evans* with approval regarding the interaction between the entireties presumption and the statute of frauds. *See Wykel*, 288 A.3d at 894-95, 894 n.2 (citing *Evans*, 421 B.R. at 199).

However, instantly, the trial court concluded:

Here, [Husband] testified, "I told [Wife] I did not want anything to do with it, I did not want to live in this house." [N.T. Trial at 74]. He also affirmed that he expected her to be liable if she carried out a plan he wanted nothing to do with. [*Id.* at 76]. While the record reflected that his own indebtedness was a consideration for [Wife] applying for a loan in her name only, [Husband] was clear that he played no active role at all in shopping for or applying for loans to purchase the house because he was opposed to the move and [Wife] was aware of this. *See* Exhibits D-4, D-5, and D-6.[8] The fact that [Husband] ultimately moved to stay with his wife and child does not invalidate the fact that [Wife] was not authorized to bind him in connection with the loan and mortgage. They were simply not in agreement about purchasing the home and moving.

Ms. Johnson's testimony about the [loan] servicer file also demonstrated the intentional lack of participation by [Husband]. The mortgage document did not contain a line for [Husband's] signature. Even so, [Husband] could have signed a separate document as a non-borrower that acknowledged that the whole property was encumbered. [N.T. Trial at 66, 70]. However, it appears that there was no such document in the file. Ms. Johnson did not recall any document with [Husband's] name on it in the servicer file. [*Id.* at 70-71].

For all of the reasons discussed above, this court found that the entireties presumption was rebutted by credible testimony that [Husband] expressed his opposition to purchasing a house and moving out of Homestead, that [Husband] played no role in the loan application process, and the structuring of the mortgage was intentional on the part of the parties to the transaction.

Trial Ct. Op. at 9-11 (some citations omitted).

Based on our review of the record, we discern no error in the trial court's

conclusions. *See Davis*, 194 A.3d at 605. The facts of this case are unlike

---

[8] S.R.R. at 37b-39b.

the facts of **Wykel** or **Evans**. In **Wykel**, the trial court made findings of fact that the wife deferred to the husband on financial matters. **See Wykel**, 288 A.3d at 893. Therefore, the trial court held that the wife had failed to rebut the entireties presumption with evidence that her husband did not have her tacit authority to take out a new mortgage. **See id.** In **Evans**, the district court concluded that the entireties presumption applied because it was undisputed that the wife consented to the granting of the mortgage although the husband was the sole party who signed the mortgage documents. **See Evans**, 421 B.R. at 195, 197, 200.

Here, the trial court found that Husband had rebutted the entireties presumption with credible testimony that he opposed Wife's decision to obtain a mortgage loan to purchase the Property and that Wife did not have authority to bind Husband in connection with the mortgage. **See** Trial Ct Op. at 9-11; **see also Davis**, 194 A.3d at 605 (stating that "this Court is not permitted to reexamine the weight and credibility determination or substitute our judgment for that of the fact finder" (citation omitted)). Viewing the evidence in the light most favorable to Appellees as the verdict winner, we conclude that Husband rebutted the entireties presumption by a preponderance of the evidence. **See Wykel**, 288 A.3d at 893. Therefore, Appellant is not entitled to relief on this claim.

### Equitable Lien

Lastly, Appellant argues that the trial court erred by failing to grant Appellant an equitable lien against the Property. Appellant's Brief at 17-19.

In support, Appellant asserts that the three elements necessary to establish an equitable lien are present in this case, including "an obligation owing from one to another, a *res* to which such obligation attaches, and an intent that the *res* be security for payment of the obligation." *Id.* at 17 (citing ***Mermon v. Mermon***, 390 A.2d 796 (Pa. Super. 1978)). Specifically, Appellant claims that the obligation is the loan made by Appellant's predecessor-in-interest to Wife, the *res* is the Property, and the terms of the mortgage establish the intent that the Property is security for the payment of the loan. *Id.* at 17-18. Appellant further contends that Husband was unjustly enriched because the mortgage was used to pay off a prior mortgage on the Property and Husband had the benefit of residing at the Property for seventeen years.[9] *Id.* at 18 (citing, *inter alia*, N.T. Trial at 49). Appellant concludes that the trial court's holding that the entire Property is not security for the mortgage must be reversed because it "provide[s] a windfall to the [Appellees] and result[s] in

_____

[9] Appellant also argues that "the trial court gave 'short shrift'" to Husband's admissions that Wife used the funds from the loan secured by the mortgage to purchase the Property and Appellees continue to reside at the Property. Appellant's Brief at 18 n.3 (citing ***M & T Mortg. Corp. v. Townsend***, 1247 EDA 2012, 2013 WL 11273051 (Pa. Super. filed Mar. 25, 2013) (unpublished mem.). First, ***Townsend*** is an unpublished decision of this Court that was filed prior to May 1, 2019; therefore, it cannot be cited or relied upon even as persuasive authority. *See* Pa.R.A.P. 126(b). Second, Appellant argues that the trial court erred in weighing Husband's testimony. Insofar as Appellant is arguing that the trial court failed to give appropriate weight to certain evidence, Appellant is not entitled to relief on this claim. ***See Davis***, 194 A.3d at 605 (stating that "this Court is not permitted to reexamine the weight and credibility determination or substitute our judgment for that of the fact finder" (citation omitted)).

unjust enrichment to them both." *Id.* at 18-19 (citing, *inter alia*, *McConaghy v. Bank of New York for Certificate Holders CWALT, Inc., Alternative Loan Tr. 2006-45T1, Mortg. Pass-Through Certificates, Series 2006-45T1*, 192 A.3d 1171 (Pa. Super. 2018)).

> This Court has explained:
>
> An equitable lien arises from an obligation, usually monetary in nature, owing by one person to another, a *res* to which that obligation attaches, and an intent by all parties that the property serve as security for the payment of the obligation. Such a lien is appropriate where the defendant's interest in the property is subject to an obligation owed to the plaintiff. . . . [A]n equitable lien arises from a contract indicating an intent to make certain property security for an obligation or from a situation which otherwise would result in unjust enrichment.
>
> In *Mermon* . . . we noted that a right to an equitable lien requires evidence that is "clear, precise and indubitable as to the intention of the parties." Furthermore, before the lien can be imposed upon a particular parcel of property to secure a debt, "there must be an agreement sufficiently clear and unambiguous evidencing such intent." [*Id.*] at 800. We held in *Mermon* that "[t]he mere borrowing of money does not in itself give a lender a lien and 'in the absence of a showing of an intent to create it, an equitable lien will not arise in favor of one who advances money to pay the purchase price of realty.'" *Id.*

*US Bank Nat'l Ass'n for Wells Fargo Alternative Loan Tr., Series 2005-1 v. Finkel*, 164 A.3d 512, 515 (Pa. Super. 2017) (some citations omitted and formatting altered).

"Unjust enrichment is essentially an equitable doctrine. It is well-established that courts sitting in equity hold broad powers to grant relief that will result in an equitable resolution of a dispute. In addition, a trial court must formulate an equitable remedy that is consistent with the relief

requested." ***Gutteridge*** 165 A.3d at 916 (citations omitted and formatting altered).

> Additionally, this Court has explained:

> To sustain a claim of unjust enrichment, a claimant must show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that it would be unconscionable for [him] to retain. The application of the doctrine depends on the particular factual circumstances of the case at issue. In determining if the doctrine applies, our focus is not on the intention of the parties, but rather the most critical element of this equitable doctrine, which is whether the enrichment of the defendant is unjust. The doctrine does not apply simply because the defendant may have benefited as a result of the actions of the plaintiff.

***Id.*** at 917 (citations omitted and formatting altered).

In ***McConaghy***, a husband and wife both executed a mortgage on property that they purchased as tenants by the entireties. ***McConaghy***, 192 A.3d at 1173. In 2004, the couple subsequently took out and signed a new mortgage (2004 mortgage) and paid off the first mortgage. ***Id.*** The husband then obtained several additional mortgages on the property without the wife's involvement. ***Id.*** However, the husband used the funds from these subsequent mortgages to pay off the 2004 mortgage. ***Id.*** After the husband's death, the wife filed an action to quiet title claiming that her late husband "did not have the permission or legal right to unilaterally encumber the property with a mortgage." ***Id.*** at 1174 (citation omitted and formatting altered). The bank filed a counterclaim asserting unjust enrichment. ***Id.*** On appeal, this Court concluded that the wife had been unjustly enriched and that the bank

was entitled to an equitable lien because even though the wife did not sign the subsequent mortgages, the husband had used those funds to pay off the 2004 mortgage, which both the husband and the wife had signed. *Id.* at 1176-77; *see also Infante v. Bank of Am., N.A.*, 130 A.3d 773, 774-76, 780 (Pa. Super. 2015) (affirming the trial court's holding that the wife had been unjustly enriched by the husband taking out a new mortgage in his name only to pay off a prior mortgage that both spouses had signed and that the bank was entitled to an equitable lien equal to the payoff amount of the prior mortgage).

Here, the trial court concluded:

This issue can be addressed on many of the same grounds as [Appellant's entireties presumption claim]. Given this court's finding that the entireties presumption was rebutted, there is no basis for reformation of the mortgage and also no basis for imposing an equitable lien on the subject property under the circumstances of this case.

In the illustrative case of *Herb v. Citimortgage, Inc.*, 955 F. Supp. 2d 441 (M.D. Pa. 2013), the District Court denied cross motions for summary judgment on plaintiff-wife's quiet title action. The District Court found that the wife had no knowledge of or intent to enter into the mortgage, so there was no basis for an equitable mortgage. *Id.* at 450. Similarly, in this case, [Wife] took it upon herself to seek out and purchase a new home without [Husband's] authorization.

Further, [Husband] did not receive a financial windfall when the mortgage came into existence sufficient to sustain the imposition of an equitable lien. *See Infante* . . . (Where an equitable lien was granted on property held by the entireties but only mortgaged in husband's name, lien imposed was only for an amount equal to the payoff of a prior mortgage in the name of husband and wife together in 2004). When [Wife] executed the mortgage, [Husband] did not receive a payoff of any existing indebtedness

as a result of the loan secured by [Wife]. Accordingly, there is no basis for imposing an equitable lien.

Trial Ct. Op. at 11-12.

Based on our review of the record, we discern no error in the trial court's conclusions. *See Davis*, 194 A.3d at 605. The record supports the trial court's finding that Husband did not authorize Wife to obtain a mortgage on his behalf. *See* Trial Ct Op. at 9-12. Therefore, Appellant has failed to establish by "clear, precise and indubitable evidence" that Husband intended for his interest in the Property serve as security for the payment of the mortgage. *See Finkel*, 164 A.3d at 515.

Further, the facts of this case are unlike the facts of *McConaghy* or *Infante*. In both of those cases, this Court concluded that the non-signing spouses were unjustly enriched because the signing spouses used funds from a new mortgage to pay off prior mortgage debt shared by both spouses. *See McConaghy*, 192 A.3d at 1173-77; *Infante*, 130 A.3d at 774-76, 780. Instantly, Wife obtained a mortgage without Husband's signature, and it is undisputed that she used those funds to purchase the Property. *See, e.g.*, N.T. Trial at 46, 72, 78-79, 103; R.R. at 43a-46a (deed from Jeffrey J. Collins and Carla Collins conveying the Property to Appellees).

Finally, contrary to Appellant's assertions, there was no evidence on this record that Husband obtained a benefit from the satisfaction of a prior mortgage on the Property. At trial, Ms. Johnson testified regarding Plaintiff's Exhibit 3, the HUD-1 settlement statement (HUD) as follows:

Q. Does the HUD show the total amount of the mortgage borrowed by [Wife]?

A. Yes.

Q. What is the total amount?

A. $135,000.

Q. I'm going to draw your attention to line 202, what is that referencing?

A. The personal property. You said 202?

Q. Yes.

A. Sorry. The principal amount of the new home.

Q. So that's the total amount of this mortgage or the money that was borrowed for this mortgage, correct?

A. The total amount for the new loan was $108,000, yes.

Q. So now I want you to look at line 504. Could you please read what that says?

A. Payoff of the first mortgage from Countrywide Home Loan Service, LP[10] was $70,690.75.

Q. What does it mean when HUD says payoff of first mortgage loan?

A. There was a prior mortgage to the loan that needed to be paid off so they could have so they could obtain a title to the property.

Q. So does that mean that of the $108,000 that was borrowed, $70,000 of it was used to pay off a loan that was attached to this property?

A. Yes.

*See* N.T. Trial at 48-50. Clearly, Ms. Johnson did not identify the borrower(s) under the Countrywide mortgage during her testimony. *See id.* at 44-71.

_____

[10] Hereafter "Countrywide mortgage."

Further, Plaintiff's Exhibit 3, was not admitted into evidence. *See* R.R. at 42a (list of Appellant's exhibits admitted into evidence at trial). Appellant did not present any other evidence identifying the borrowers under the Countrywide mortgage. Because Appellant did not prove by a preponderance of the evidence that Husband was a borrower under the Countrywide mortgage,[11] Appellant failed to establish that Wife used the funds obtained under the mortgage at issue to satisfy any of Husband's prior debts or obligations. Therefore, Appellant's claim before this Court on appeal fails because it seeks to argue facts not in evidence before the trial court below. Further, *McConaghy* and *Infante* are distinguishable and not applicable to the facts of this case.

For these reasons, we agree with the trial court that Husband was not unjustly enriched by the mortgage or Wife's purchase of the Property. *See Gutteridge*, 165 A.3d at 916. Accordingly, Appellant is not entitled to an equitable lien against the Property. *See Finkel*, 164 A.3d at 515. For these reasons, we affirm.

Judgment affirmed. Jurisdiction relinquished.

_____

[11] Further, when reviewing a non-jury verdict, this Court views the evidence in the light most favorable to Appellees, the verdict winners and rejects all inferences from the evidence that are unfavorable to the verdict winners. *See Gutteridge*, 165 A.3d at 914. Accordingly, based on the evidence presented at trial, we must reject any inference that Husband was a borrower under the Countrywide mortgage. *See id.*

Judge Pellegrini joins the memorandum.

Judge Olson concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/16/2023