Riley, Appellant, *v.* Boynton Coal Co. et al.

Argued October 8, 1931. Before Frazer, C. J., Walling, Simpson, Kephart, Schaffer, Maxey and Drew, JJ.

*Thomas J. Itell,* with him *J. C. Lowry,* for appellant. —Lapse of time, even when apparent on the face of plaintiff's claim, is not an absolute defense, cannot alone

be made the basis for denying plaintiff a hearing to show cause of or excuse for delay; when preliminary objection is sustained, plaintiff must be given chance to amend: Bischoff v. Dairy Co., 302 Pa. 130; Gray v. Coal & Iron Co., 286 Pa. 11; Miller v. Miller, 284 Pa. 414; Pa. S. Val. R. R. v. Paper Mills, 149 Pa. 18.

Claimant is not bound in his pleading to negative possible defenses: Ross v. Leberman, 298 Pa. 574; Second Nat. Bank v. Gardner, 171 Pa. 267; Edwards v. Ry., 268 Pa. 228; Townsend v. Vanderwerker, 160 U. S. 171; Carter v. Vandergrift, 74 Pa. Superior Ct. 26.

Directors of a corporation are fiduciaries of the highest order, made so by law; when adjudged guilty of a breach of their trust, they will not be permitted, while still holding the fruits of their wrongdoing, to plead limitations or laches as defense to a bill for accounting, brought by a wronged stockholder: Passmore's Est., 194 Pa. 632; Gruber v. Hayes, 280 Pa. 489; Prevost v. Gratz, 6 Wheaton 481.

A director of a corporation is a trustee for the entire body of stockholders: Gilmore v. Drug Co., 279 Pa. 193; Porter v. Healy, 244 Pa. 427; Com. T. & T. Co. v. Seltzer, 227 Pa. 410; Bird C. & I. Co. v. Humes, 157 Pa. 278.

Where matters of fact to serve as basis for conclusions of law are susceptible of proof, presumptions are not to be indulged; where possible, the basis for conclusions of law must be certain.

The offending directors having been shown conclusively to have violated the law as well as neglected imposed duty, in regard to the subject-matter of the controversy, will not be heard in a court of equity when attempting to interpose a defense to shield their own wrongdoing: Orne v. Coal Co., 114 Pa. 172; St. Peters Evan. L. Church v. Kleinfelter, 96 Pa. Superior Ct. 146; Lewis & Nelson's App., 67 Pa. 153.

*Clarence L. Shaver,* with him *Francis J. Kooser, Ernest O. Kooser* and *James O. Courtney,* for appellee.

—Plaintiff is barred by laches: Ashhurst's App., 60 Pa. 290; Watt's App., 78 Pa. 370; Ridgway's Account, 206 Pa. 587; Steele v. Steele, 25 Pa. 154; Taylor v. Coggins, 244 Pa. 228; Stevens v. R. R., 278 Pa. 284; Patton v. Trust Co., 276 Pa. 95; Kinter v. Trust Co., 274 Pa. 436.

OPINION BY MR. JUSTICE MAXEY, November 23, 1931:

This case involves the question of the effect of lachès in barring actions in equity.

Illegal and fraudulent relations, so the bill avers, were entered into by the Boynton Coal Company and the Elk Lick Mining Company, a partnership, to the prejudice of the plaintiff, one of the four stockholders of the coal company, in 1918 and continued until 1920. The plaintiff had knowledge of this as early as June, 1918. In 1920 a committee of two of the directors of the coal company was appointed to consider plaintiff's complaint. No action was taken in the matter by this committee. The plaintiff filed this bill on March 21, 1930. In it he set forth that the coal company and the mining company had entered into an arrangement whereby the mining company was given the use of the coal company's established business, good will, its equipment, etc., to the benefit of which all four stockholders of the coal company were entitled, whereas by the arrangement the benefit of this went to the other three stockholders and directors of the coal company who were at the same time partners in the mining company. He prayed that the coal company render an accounting for all its transactions with the mining company since the year 1917.

Two of the directors and stockholders of the coal company were F. A. Maust, its president, and H. H. Maust, its treasurer. These two had also constituted the committee above mentioned. Frank Maust died March 22, 1924, and A. C. Maust died December 25, 1928. In the prayer of plaintiff's bill, he asks that the three directors of the coal company, who are interested in the mining company or their legal representatives state an account-

ing showing all payments of money received by them through the mining company. He also prayed that a receiver be appointed for the coal company to aid in having the aforesaid accounts stated and to make an inventory of all property.

The defendants filed an answer by way of preliminary objections to the bill setting forth, inter alia, "The laches of plaintiff have been such as to defeat his recovery in this case, and to estop him from obtaining any of the remedies sought, and to prevent disturbance of the adjustments, settlements and dispositions that have already been made of the income of said Elk Lick Mining Company and Boynton Coal Company, in the equipment and operation of business by said Elk Lick Coal Company."

The court below held that the laches were fatal and dismissed the bill saying, inter alia, "The general principle is that nothing can call forth the court of chancery into activity but conscience, good faith and reasonable diligence: Kinter v. Com. Tr. Co., 274 Pa. 436. The doctrine is founded on the equity maxim that 'equity aids the vigilant, not those who slumber upon their rights.' Its object is in general to exact of the complainant fair dealing with his adversary, and the rule was adopted largely because, after great lapse of time, from death of parties, loss of papers, death of witnesses and other causes, there is danger of doing injustice, and there can no longer be safe determination of the controversy. 'Laches is not to be imputed to a party from mere lapse of time alone; it is an implied waiver, arising from knowledge of existing conditions and an acquiescence in them.' "

Our various statutes of limitations and the rulings of chancellors upon pleas of laches are expressive of the feelings of mankind that, where there are wrongs to be redressed, they should be redressed without unreasonable delay, and where there are rights to be enforced, they should be enforced without unreasonable delay.

Those who have interests which they wish to have judicially characterized as legal rights should take prompt measures to bring such interests before the proper tribunals. Persons against whom actions may be threatened have claims to judicial consideration as well as those who threaten such actions; both are equally entitled to have the controversy between them promptly adjudicated while witnesses are still available and memories are undimmed by long intervening years. In 21 Corpus Juris, page 210, laches is defined as an "inexcusable delay in asserting a right; an implied waiver arising from knowledge of existing conditions and an acquiescence in them; such neglect to assert a right as, taken in conjunction with lapse of time more or less great, and other circumstances causing prejudice to an adverse party, operates as a bar in a court of equity; such delay in enforcing one's rights as works disadvantage to another." In the first volume of Story's Equity Jurisprudence, section 529, that learned jurist says: "In matters of account, although not barred by the statute of limitations, courts of equity should refuse to interfere after a considerable lapse of time from considerations of public policy." In Hammond v. Hopkins, 143 U. S. 224, it was stated by Chief Justice FULLER, speaking for the United States Supreme Court, that: "The rule [as to the denial of a belated prayer for a decree for an account] is particularly applicable where difficulty of doing entire justice arises through the death of the principal participants in the transactions complained of, or of the witness or witnesses, or by reason of the original transactions having become so obscured by time as to render the ascertainment of the exact facts impossible." In Taylor v. Coggins, 244 Pa. 228, an order dismissing plaintiff's bill was affirmed by this court on the lower court's opinion in which appears the following: "Laches is not excused by simply saying: 'I did not know.' If by diligence a fact can be ascertained the want of knowledge so caused is no excuse for a stale

claim. The test is not what the plaintiff knows, 'but what he might have known, by the use of the means of information within his reach, with the vigilance the law requires of him': Scranton Gas & Water Co. v. Lackawanna Iron & Coal Co., 167 Pa. 136."

The court below held that the plaintiff did not show due diligence in instituting these proceedings and that it would be inequitable to investigate now the transactions which accrued during the lifetime of the president of the coal company, F. A. Maust, and of the director, A. C. Maust, both of whom are now deceased. The court said further that nothing appears on the face of the bill to excuse the plaintiff's delay in bringing this action.

We agree with the court below. The delay apparent on the face of the bill and for which no explanation is offered in the bill convicts the plaintiff of such laches or unreasonable or unwarranted delay as bars him from the equitable relief he seeks.

It is well settled that if laches is apparent in the bill itself, it can be taken advantage of by demurrer and there is no good reason for requiring a plea or answer to bring it to the notice of the court: Kinter v. Com. Tr. Co., 274 Pa. 436; Landsdale v. Smith, 106 U. S. 391.

Appellant also contends that the court below erred in dismissing the bill without giving the plaintiff an opportunity to amend it and explain the delay. The plaintiff is not entitled to amend his bill in the absence of averments of reasons which if established would offer a satisfactory explanation of his laches. The proper practice in this respect is stated by Justice GRIER of the United States Supreme Court in Badger v. Badger, 69 U. S. 87, and reiterated by Justice HARLAN in Landsdale v. Smith, (supra), as follows: "A party who makes an appeal to the conscience of the chancellor 'should set forth in his bill specifically what were the impediments to an earlier prosecution of his claim; how he came to be so long ignorant of his rights, and the means used by the respondent to fraudulently keep him in ignorance; and

how and when he first came to a knowledge of the matters alleged in his bill; otherwise the chancellor may justly refuse to consider his case, on his own showing, without inquiry whether there is a demurrer or formal plea of the statute of limitations contained in the answer."

We adopt that statement as the procedure that must be adhered to in the courts of this Commonwealth when the bill itself discloses a prima facie unwarranted delay in seeking redress of alleged wrongs. A plaintiff will not be afforded an opportunity to amend his bill so as to explain his laches unless he sets forth in a petition for leave to amend reasons which would relieve him of the charge of inexcusable delay in seeking the rights he alleges and unless he avers under oath that he expects to be able to support these reasons with competent testimony.

In the case of Kinter v. Com. Tr. Co., 274 Pa. 436, Mr. Justice WALLING well summed up the law applicable to the case before us, as follows: "Equity will not lend its aid to one who has slept upon his rights until the original transaction is obscured by lapse of years and death of parties. See Dalzell v. Lewis, 252 Pa. 283. ...... Plaintiff is not only chargeable with what he knew but also with what he could have discovered by reasonable diligence." He quotes from the opinion of President Judge RICE in Goggins v. Risley, 13 Pa. Superior Ct. 316, as follows: " 'It is a general rule that laches or staleness of demand constitutes a defense to the enforcement of the right or demand so neglected...... The doctrine is based in part on the injustice that might result from the enforcement of long neglected rights, and the difficulty, if not the impossibility of ascertaining the truth of the matters in controversy and doing justice between the parties, and in part on grounds of public policy, its aim being the discouragement, for the peace and repose of society, of stale and antiquated demands': 21 C. J. 212, 214." Justice WALLING also quotes with ap-

proval the following: " 'It is well settled that a party who seeks to avoid the consequences of an apparently unreasonable delay in the assertion of his rights on the ground of ignorance must allege and prove, not merely the fact of ignorance, but also when and how knowledge was obtained, in order that the court may determine whether reasonable effort was made by him to ascertain the facts': Hardt v. Heidweyer, 152 U. S. 547, 558."

We hold that in the case before us the question of laches was properly raised by preliminary objections to the bill and properly adjudicated.

The decree is affirmed at the cost of the appellant.