J-A02006-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| DEUTSCHE BANK NATIONAL TRUST COMPANY, AS A TRUSTEE UNDER POOLING AND SERVICING AGREEMENT DATED AS OF JUNE 6, 2002 PFCA HOME EQUITY TRUST 2003-IFC3, BY PHH MORTGAGE CORPORATION, SUCCESSOR BY MERGER TO OCWEN LOAN SERVICING, LLC, ITS ATTORNEY-IN-FACT | : : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : | |
| v. | : : | |
| JOSEPH A. OZIMOK, NICOLE M. OZIMOK, AND FRIENDLY FEDERAL CREDIT UNION | : : : : | |
| Appellees | : | No. 630 WDA 2024 |

Appeal from the Judgment Entered May 17, 2024
In the Court of Common Pleas of Beaver County Civil Division at No(s):
10425 of 2021

BEFORE:  KUNSELMAN, J., MURRAY, J., and BECK, J.

MEMORANDUM BY KUNSELMAN, J.:                **FILED: MAY 14, 2025**

In this dispute over the validity of a mortgage, Deutsche Bank National Trust Company, as a Trustee under a pooling and servicing agreement, etc. ("Deutsche Bank"), appeals from the judgment entered in favor of Joseph A. Ozimok, Nicole M. Ozimok, and Friendly Federal Credit Union ("the Credit Union").  Because Deutsche Bank's delay in bringing this suit did not prejudice the Ozimoks or the Credit Union, the trial court mistakenly barred Deutsche

Bank's counts for declaratory judgment and quiet title. We therefore vacate the judgment and remand for further proceedings.

## I. Factual & Procedural Background

On November 26, 2002, Mr. and Mrs. Ozimok bought a home in Beaver County by the entireties. The purchase price was $500,000.

Mrs. Ozimok mortgaged her undivided interest in the whole property to Flagstar Bank. She signed a note and sealed mortgage in exchange for a loan of $400,000 to buy the home. However, Mr. Ozimok signed neither the note nor the mortgage. The Ozimoks moved into the home, and they made regular payments on the mortgage.

In 2016, Deutsche Bank purchased the mortgage from Flagstar. Three years later, the Ozimoks jointly applied for a home-equity loan from the Credit Union. On the application, they indicated that there was a first mortgage with Ocwen Loan Servicing, LLC, Deutsche Bank's servicing agent. However, the Credit Union had Allied Adjustors perform a title search on the property, and Allied Adjustors reported that there was no mortgage on the property.

During the COVID-19 pandemic, Mr. Ozimok's catering business became financially distressed. As a result, the Ozimoks stopped payments on the mortgage to Deutsche Bank.

In 2021, Deutsche Bank filed this action against the Ozimoks and Credit Union for declaratory judgment, quiet title, and other forms of equitable relief. In the counts for declaratory judgment and quiet title, Deutsche Bank asked the court to rule that (1) its mortgage was valid and enforceable against Mr.

Ozimok, as well as Mrs. Ozimok, and (2) its mortgage was senior in priority to the Credit Union's mortgage.

The case proceeded to a bench trial. Thereafter, the court issued a non-jury decision. Of relevance to this appeal, the court barred Deutsche Bank's prayer for declaratory judgment under the doctrine of laches. Even though Deutsche Bank filed this action within the 20-year statute of limitations for sealed mortgages, the trial court, relying upon its equitable powers, held that our statute of limitations preserves the doctrine of laches as it existed in the early to mid-1900s.[1]

Thus, the trial court opined:

> the actions of [Deutsche Bank] were extremely dilatory and should be bound by the doctrine of laches . . . Clear prejudice is shown with regard to all Defendants here, especially with regard to [the Credit Union], which first perfected its mortgage by securing both signatures on its recorded mortgage. [Deutsche Bank] is arguing and suggesting that this court should exercise its jurisdiction by having the court revert back 18-and-one-half years and reform a mortgage and make [the Credit Union] subject to that reformation, while [Deutsche Bank] sat on its hands all this time. Equity will clearly not recognize such conduct. For that reason, [its] request to reform this mortgage under the entireties presumption is denied.

Trial Court Opinion, 1/17/24, at 20 (some footnote omitted).

Deutsche Bank filed a post-trial motion, which the trial court deemed to be excessive in length and obdurate. The court therefore ordered Deutsche

---

[1] *See* 42 Pa.C.S.A. § 5501(c) ("Nothing in this [statute of limitations] shall modify the principles of . . . laches . . . heretofore applicable in equitable matters.")

J-A02006-25

Bank to file a shortened version of its motion. Deutsche Bank complied, and

the trial court denied its amended motion for post-trial relief. Deutsche Bank

timely appealed.[2]

## II. Analysis

Deutsche Bank raises five appellate issues, which we have reordered for

ease of disposition as follows:

1.  Whether the [trial] court erred in finding that Deutsche Bank waived all issues on appeal under Pa.R.A.P. 1925(b)?

2.  Whether the [trial] court erred in ruling that laches bars Deutsche Bank's claims despite the [Ozimoks and the Credit Union's] lack of due diligence in taking action on their own, and neither the [Ozimoks and the Credit Union] nor the [trial] court identifying any legitimate bases for either element [of] laches?

---

[2] On May 30, 2024, Deutsche Bank appealed from "the Memorandum Opinion and Order entered in this matter on January 17, 2024 and the Memorandum Opinion and Order entered in this matter on May 8, 2024." Notice of Appeal at 1.

This phrasing in the notice of appeal is incorrect, because the trial court's January 17th non-jury decision and May 8th Order disposing of the post-trial motions are interlocutory, non-appealable orders. *See Johnston the Florist v. TEDCO Construction*, 657 A.2d 511, 514 (Pa. Super. 1995) (*en banc*). Instead, "an appeal to this Court can only lie from judgments entered subsequent to . . . the order denying post-trial motions." *Id.* Deutsche Bank should have phrased its appeal as, "from the judgment entered on May 10, 2024 following praecipe of the Credit Union."

Nevertheless, because Deutsche Bank filed its notice of appeal on May 30, 2024 – *i.e.*, within 30 days of the entry of the final judgment – its appeal is timely. The minor phraseological error in Deutsche Bank's notice of appeal does not divest our appellate jurisdiction. *See, e.g.*, *Brown v. Philadelphia Coll. of Osteopathic Med.*, 760 A.2d 863, 865 n.1 (Pa. Super. 2000).

- 4 -

3.     Whether the Ozimoks failed to rebut the entireties presumption, so the presumption applies and dictates that Deutsche Bank's mortgage remains a valid, perfected mortgage-lien against both Ozimoks' interests in the property since the date of recording, with lien priority therefrom?

4.     Whether the [trial] court erred by ruling that the application of the entireties presumption requires mortgage reformation *nunc pro tunc* to apply the same to both Ozimoks' interests . . . ?

5.     Whether [the Credit Union's] admitted . . . notice of Deutsche Bank's mortgage lien, and lack of *bona fide* mortgagee status, precludes [the Credit Union's] claim to lien priority   . . . ?

Bank's Brief at 6-7.  We address only the first two issues, because they are dispositive of this appeal.

*A.     Deutsche Bank's 1925(b) Statement*

First, Deutsche Bank argues the trial court erroneously found waiver of its appellate issues based on Rule of Appellate Procedure 1925(b).  We agree that Deutsche Bank did not violate Rule 1925(b).

"The applicability of waiver principles presents a question of law, over which our standard of review is *de novo* . . . [and] our scope of review is plenary."  ***Temple Estate of Temple v. Providence Care Ctr., LLC***, 233 A.3d 750, 760 (Pa. 2020).

Under Rule 1925(b), the trial court may order an appellant to present it with a concise statement of alleged errors to aid the trial court in preparing its Rule 1925(a) Opinion.  The 1925(b) statement is "a crucial component of the appellate process, because it allows the trial court to identify and focus on

those issues the parties plan to raise on appeal." ***Kanter v. Epstein***, 866 A.2d 394, 400 (Pa. Super. 2004).

"If the judge entering the [appealed] order . . . desires clarification of the errors complained of on appeal, the judge may enter an order directing the appellant to file of record in the trial court and serve on the judge a concise statement of the errors complained of on appeal ('Statement')." Pa.R.A.P. 1925(b). "The Statement shall set forth only those errors that the appellant intends to assert." Pa.R.A.P. 1925(b)(4)(i). While the Statement "should not be redundant or provide lengthy explanations as to any error[, if] non-redundant, nonfrivolous issues are set forth in an appropriately concise manner, the number of errors raised ***will not alone*** be grounds for finding waiver." Pa.R.A.P. 1925(b)(4)(iv) (emphasis added).

Deutsche Bank's 1925(b) Statement is three pages and contains six paragraphs. According to the trial court, some "paragraphs contain multiple issues within each paragraph. For example, paragraph three contains at least three issues in that paragraph, and run-on paragraph five contains an additional three issues in that paragraph." Trial Court Opinion, 6/20/24, at 1. While we agree with the trial court that some of the issues in the 1925(b) Statement are repetitive (especially regarding laches), we do not find it to be excessive to the point of wavier.

The trial court analogized Deutsche Bank's 1925(b) Statement to a 1925(b) statement that it previously filed with Court of Common Pleas of Allegheny County in ***Bloom v. Deutsche Bank National Trust Co.***, 462 WDA

2023, 2024 WL 1741180 (Pa. Super. 2024) (non-precedential). In that case, we imposed the 1925(b)-wavier penalty on Deutsche Bank for an excessively long statement of errors.

*Bloom* involved whether the trial court should reform a mortgage based on fraud. The bench trial had three witnesses and lasted two days. After the court entered judgment in favor of Ms. Bloom, Deutsche Bank appealed and filed a seven-page-long 1925(b) statement that raised over 30 issues. *See id.* at *1. The trial court found that "raising 36 separate matters deviates widely from the requirement that the statement be concise." *Id.* at *2. Our review confirmed the trial court's findings.

We held that Deutsche Bank had "no real intention or hope of litigating that plethora of issues in an appellate court, because of the word-count limits that our Rules of Appellate Procedure place upon briefs." *Id.* at *3 (citing Pa.R.A.P. 2135(a)(1)). In fact, it raised only six issues of those 36 issues in its appellate brief. Thus, we adopted the trial court's analysis and dismissed Deutsche Bank's appellate issues as waived due to an excessive 1925(b) statement.

The 1925(b) Statement in Deutsche Bank's current appeal is narrower in scope than its statement in *Bloom*. Although this Statement could have been more concise, we cannot say that it was unduly excessive or extravagant such that Deutsche Bank waived all of its issues. Indeed, most of the issues and subissues in the 1925(b) Statement appear in Deutsche Bank's Brief. Therefore, unlike in *Bloom*, Deutsche Bank provided the trial court with an

accurate list of most of the issues it intended to raise in this Court. Hence, the fact that Deutsche Bank presented the trial court with six, detailed paragraphs, some with subissues, does not, in and of itself, render the 1925(b) Statement excessive.

Moreover, the trial court and all parties repeatedly acknowledged below that this is a complex case of first impression, regarding the application of presumption of the entities in conjunction with the question of mortgage priority. Given that this case was far more complex than the single issue of fraud in *Bloom*, it is unsurprising that Deutsche Bank wanted to preserve a fairly large number of issues in its current 1925(b) Statement. And even in light of this case's complexity, Deutsche Bank reduced the length this 1925(b) Statement by more than half of the length of its statement in *Bloom*.

Finally, and perhaps most importantly, the trial court previously opined upon all the major issues that Deutsche Bank raises in this appeal. In fact, the trial court said that it "thoroughly addressed the issues in this case in its Memorandum Opinions of January 17 and May 8, 2024 . . . and relies upon those Opinions to address the convoluted issues raised in [Deutsche Bank's] 1925(b) statement." Trial Court Opinion, 6/20/24, at 3.

Unlike the 1925(b) statement in *Bloom*, where Deutsche Bank wanted to impede the trial court's ability to craft a meaningful opinion for appeal, its 1925(b) Statement in this case did not have that effect. This Statement did not inhibit our ability to garner the trial court's reasoning on any of the issues before us. Hence, this Statement did not inhibit our appellate review. Thus,

we disagree with the trial court that Deutsche Bank's 1925(b) Statement was excessive to the point of resulting in waiver. We therefore proceed to address the merits of this appeal.

*B.     The Doctrine of Laches*

Next, Deutsche Bank disputes the trial court's application of laches to bar the counts of declaratory judgment and quiet title. Deutsche Bank claims that the trial court erred, "because the court's decision and findings do not support both laches elements . . . ." Deutsche Bank's Brief at 39. As to the first element (unreasonable delay in filing suit), Deutsche Bank argues it did not unreasonably delay, because it was under no obligation to file this action. Rather, the Ozimoks and the Credit Union had the legal obligation to attack the validity of Deutsche Bank's presumptively valid mortgage on the entireties of the property. ***See id.*** at 41-43. Deutsche Bank contends the Ozimoks and Credit Union "had the initial obligation to rebut the presumption [of the entireties], so that [the Ozimoks and Credit Union], not the Bank, lacked due diligence." ***Id.*** at 42.

Deutsche Bank also argues that, because the Ozimoks and Credit Union delayed in suing it, they have unclean hands, and thus equity cannot grant them relief. ***See id.*** at 42. According to Deutsche Bank, the trial court impermissibly placed the burden of undue delay for laches upon it. ***See id.*** at 42-43. Furthermore, Deutsche Bank claims that, even if it had an obligation to bring this action, its equitable obligation to do so did not begin to run until

it filed suit in 2021, when Deutsche Bank believes the Ozimoks and Credit Union first contested the validity of its mortgage. *See id.* at 44-45.

As to the second element of laches (prejudice from the delay), Deutsche Bank claims there is no evidence that its delay prejudiced the Ozimoks, because they always acted as if Deutsche Bank's mortgage was valid. *See id.* at 47-50. Thus, in Deutsche Bank's view, the trial court found prejudice based solely upon the length of delay in filing this action, rather than any actual prejudice to the Ozimoks.

Regarding the Credit Union, Deutsche Bank claims that the Credit Union suffered no prejudice, because it had actual or constructive notice of Deutsche Bank's mortgage when the Credit Union issued its home-equity loan to the Ozimoks in 2011. It argues the Credit Union knew or should have known that, under the entireties presumption, if one spouse mortgages the property, that mortgage is valid and binding upon the non-signing spouse. Thus, the Credit Union's title search should have revealed Deutsche Bank's mortgage, which Flagstar recorded in 2002. Deutsche Bank therefore argues that the trial court mistakenly relied upon that title search in its laches analysis. *See id.* at 51.

In response, the Ozimoks argue that Deutsche Bank waived any laches issue "by failing to include it in the statement of questions and by failing to brief it." Ozimoks' Brief at 4-5. They also contend the cases upon which Deutsche Bank relies to show that the Credit Union had constructive notice of Deutsche Bank's mortgage do not apply, because they involve perfected but unrecorded mortgages. In the Ozimoks' view, Deutsche Bank had an

unperfected, recorded mortgage. *See id.* at 5-7. Thus, they claim prejudice to the Credit Union is "obvious", *i.e.*:

> the loss of a perfected, first-priority lien held by [the Credit Union] that did the required due diligence and followed the simple rules to create a perfected, security interest as opposed to a business (Flagstar) that failed to follow the rules and its successor in interest [*i.e.*, Deutsche Bank] that failed to do any due diligence before purchasing Flagstar's loan.

*Id.* at 7. Because the Credit Union had a perfected, first-position lien, the Ozimoks contend it was not required to file any action to reform Deutsche Bank's unperfected mortgage. *See id.* at 8.

The Ozimoks similarly suggest they had no obligation to sue Deutsche Bank to rebut the entireties presumption and to have their property declared free of its mortgage. *See id.* at 9-10. "What [Deutsche Bank] is asking this Court to do is create an obligation upon mortgag[ors] to verify the validity of liens held by lenders and to file suit to declare real property already free from liens as being free from liens. That is an absurdity." *Id.* at 10.

As for the Credit Union, it asserts it suffered prejudice from Deutsche Bank's undue delay in filing suit, because it requested that Deutsche Bank produce Flagstar's loan-commitment letter to Mrs. Ozimok and Flagstar's instruction letter to its closing agent. Deutsche Bank failed to produce these requested pieces of evidence, which the Credit Union believes can prove that "no mistake occurred when this mortgage was originated" by Mrs. Ozimok alone. Credit Union's Brief at 13.

We begin by considering the Ozimoks' waiver argument.[3]  The Ozimoks' claim of waiver based on Rules 2116 and 2119[4] is odd, given their lengthy response to Deutsche Bank's argument on laches, an issue included at letter "d" in the statement of issues involved.  **See** Deutsche Bank's Brief at 7. Undoubtedly, Deutsche Bank argued this issue in its brief.  **See id.** at 39-53. Thus, we do not find that Deutsche Bank waived the question of laches on this basis.  Even so, that finding does not end our waiver analysis.

"Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."  Pa.R.A.P. 302.  Indeed, "issue preservation is foundational to proper appellate review."  **Trigg v. Children's Hospital of Pittsburgh of UPMC**, 229 A.3d 260, 269 (Pa. 2020).  "Requiring issues to be properly raised first in the trial court ensures that trial judges have the opportunity to consider a potential appellate issue and correct any error at the first available opportunity."  **Id.**

As part of issue preservation and as a prerequisite for appellate review, "post-trial relief may not be granted unless the grounds therefor, [] if then available, were raised in . . . a request for findings of fact or conclusions of

_____

[3] Our scope and standard of review for waiver appear in Section II(A) of this Memorandum, and we reincorporate them here by reference.

[4] An appellant's "statement of the questions involved must state concisely the issues to be resolved, expressed in the terms and circumstances of the case but without unnecessary detail."  Pa.R.A.P. 2116(a).  "No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."  **Id.**  Moreover, the argument of an appellant's brief shall analyze each issue and provide us with "such discussion and citation of authorities as are deemed pertinent."  Pa.R.A.P. 2119(a).

law, offer of proof, or other appropriate method at trial." Pa.R.C.P. 227.1(b)(1). Here, some of Deutsche Bank's arguments concerning whether the Ozimoks and Credit Union needed to sue Deutsche Bank to challenge the mortgage were available to Deutsche Bank at trial. *See* Deutsche Bank's Brief at 42-45. This includes the unclean-hands theory and the claim that the first time the Ozimoks and Credit Union contested the validity of Deutsche Bank's mortgage was when Deutsche Bank filed this action.

Deutsche Bank did not raise either of those grounds in its Trial Brief or its closing argument at trial. *See* Deutsche Bank's Trial Brief at 15-16; *see also* N.T., 11/6/23, at 107-21. In fact, Deutsche Bank made *no argument* regarding the unreasonable-delay element of laches at closing. Thus, the only argument on delay that Deutsche Bank offered at trial was that, under the entireties presumption, the obligation was upon the Ozimoks and Credit Union to file suit first. *See* Deutsche Bank's Trial Brief at 15-16. Because all other arguments on delay were available to Deutsche Bank at trial, and it did not raise them, we dismiss those arguments on delay as waived under Pa.R.C.P. 227.1(b)(1). They may not serve as a basis for post-trial relief. *See id.*

Regarding Deutsche Bank's remaining arguments, the doctrine of laches "is founded on the equity maxim that 'Equity aids the vigilant, not those who slumber upon their rights.'" *Riley v. Boynton Coal Co.*, 157 A. 794, 795 (Pa. 1931). Unlike statutes of limitations that are based on mathematical calculations of time, "laches is not to be imputed to a party from mere lapse of time alone; it is an implied waiver, arising from knowledge of existing

- 13 -

conditions and an acquiescence in them." *Id.* The doctrine "is particularly applicable where the difficulty of doing entire justice arises through the death of the principal participants in the transactions . . . or of the witness or witnesses, or by reason of the original transactions having become so obscured by time as to render the ascertainment of the exact facts impossible." *Id.* (quoting *Hammond v. Hopkins*, 143 U.S. 224, 250, (1892)).

"Laches bars relief when the plaintiff's lack of due diligence in failing to timely institute an action results in prejudice to another. Because it is an affirmative defense, the burden of proof is on the defendant . . . to demonstrate [(1)] unreasonable delay and [(2)] prejudice." *Commonwealth ex rel. Pennsylvania Attorney General Corbett v. Griffin*, 946 A.2d 668, 676–77 (Pa. 2008). Furthermore, the "question of laches is factual and is determined by examining the circumstances of each case." *Id.*

As to the element of unreasonable delay, Deutsche Bank claims its and Flagstar's combined delay of 18-and-a-half years from the recording of the one-spouse mortgage in 2002 to filing this suit in 2021 is not unreasonable, because the Ozimoks and Credit Union should have filed suit instead of Deutsche Bank. We know of no case indicating that a plaintiff can flip the equitable obligation to file suit within a reasonable time onto the defendants, and Deutsche Bank has cited none. The doctrine of laches makes it incumbent upon Deutsche Bank (or its predecessor in interest, Flagstar), as the party who elected to bring this suit, to file it in a reasonable time.

Deutsche Bank makes no preserved argument that convinces us that the trial court's determination that a combined delay of 18-and-a-half years since the mortgage was recorded without Mr. Ozimok's signature was a reasonable time to wait. In fact, such a lengthy delay in bringing suit is precisely the inordinate delay that the doctrine of laches was created to prevent. "Those who have interests which they wish to have judicially characterized as legal rights should take *prompt measures* to bring such interests before the proper tribunals." *Riley*, 157 A. at 795 (emphasis added).

Because Flagstar or Deutsche Bank could have brought a declaratory-judgment action to ensure the validity of this mortgage from the day it was executed, the trial court could rationally find that Flagstar and Deutsche Bank unreasonably delayed bringing this suit. In fact, as the mortgagees, Flagstar and Deutsche Bank stood to benefit the most by protecting the mortgage's validity and lien priority on the property. Yet they waited 18-and-a-half years to bring this action. Thus, Deutsche Bank fails to convince us that the trial court's factual finding of unreasonable delay lacks support in the record.

However, regarding the second element of laches, there is no evidence that Deutsche Bank's unreasonable delay caused prejudice to the Ozimoks or the Credit Union.

Beginning with the Ozimoks, they do not identify any prejudice to themselves in their appellee brief, nor did the trial court point to any specific evidence of prejudice as to them. Indeed, there is no evidence that any party to Mrs. Ozimok's transaction with Flagstar died or any witness has become

unavailable. Moreover, they point to no evidence that was lost, which might have prejudiced their defense. Finally, the Ozimoks never altered their position based on a belief that Deutsche Bank abandoned the mortgage based on the passage of time. In fact, they continued to pay the mortgage until the economic downturn during the pandemic prevented them from doing so. Therefore, the trial court's finding of prejudice to the Ozimoks lacks any evidentiary support in the record.

As for the Credit Union, it contends that the delay led to the loss of certain letters from Flagstar to its closing agent who acquired the mortgage from Mrs. Ozimok. This evidence, according to the Credit Union, would tend to show that there was no mistake in the mortgage being signed only by Mrs. Ozimok.

Assuming the Credit Union is correct in that claim, evidence of no mistake is irrelevant to the counts for declaratory judgment and quiet title. In addition, the trial court dismissed Deutsche Bank's count for reformation of the mortgage based on mutual mistake as unproven. Hence, the Credit Union won the trial on the issue of mutual mistake. As a result, its defense of this case suffered no prejudice from the missing letters. Therefore, the missing evidence did **not** cause a "difficulty of doing entire justice . . . ." **Riley**, 157 A. at 795.

Moreover, the Credit Union's concern with prejudice from a reformation of the mortgage almost two decades after it was recorded is misplaced. Deutsche Bank does not seek reformation of the mortgage. Instead, based

on **Wykel v. Knapp**, 288 A.3d 889, 891 (Pa. Super. 2022), Deutsche Bank seeks a declaration that its mortgage was (and remains) valid as to both spouses under the entities presumption from the time Mrs. Ozimok initially mortgaged the property in 2002.

In **Wykle**, the trial court did not reform a mortgage. Instead, the court ruled that a mortgage signed by only one spouse "would **continue** to encumber [the non-signatory spouse's] interest in the subject property," because it had always encumbered the non-signatory spouse's interest from the time it was recorded. **Id.** (emphasis added). On appeal, we affirmed the trial court's grant of declaratory judgment that the mortgage was always valid as to both spouses. Therefore, because Deutsche is not seeking mortgage reformation in its counts for declaratory judgment and quiet title, the Credit Union cannot claim prejudice for those two counts on that basis.

As none of the Defendants has proven prejudice from Deutsche Bank's delay, the trial court erred in applying the doctrine of laches to the counts for declaratory judgment and quiet title in the operative complaint. Deutsche Bank's second appellate issue entitles it to a new non-jury decision on those counts.

In its remaining appellate issues, under **Wykle**, Deutsche Bank would have us award it judgment as a matter of law on its entireties-presumption theory. However, because the trial court did not reach this issue in its non-jury decision, Deutsche Bank is essentially asking us to find, in the first instance, that it offered sufficient and credible evidence necessary to establish

- 17 -

its case-in-chief and that the Ozimoks and Credit Union did not offer sufficient and credible evidence to rebut that case-in-chief. We remind Deutsche Bank that "credibility determinations are for the finder of fact and, accordingly . . . the trial court [is] free to believe all, some, or none of [the evidence and] testimony." **K.B. v. Tinsley**, 208 A.3d 123, 128 (Pa. Super. 2019). This is especially true in a fact-intensive inquiry such as the entireties presumptions, which involves multiple stages of proof and burden shifting. Thus, it is prudent to remand this matter to the trial court to make those factual findings in the first instance.

Under **Wykle**, Deutsche Bank had the initial burdens of production and persuasion to prove that the entireties presumption arose and applied. If the trial court, as sole finder of fact, finds credible evidence to give rise to that presumption, then the burdens of production and persuasion will shift to the Ozimoks and Credit Union to rebut the presumption by credible and sufficient evidence. If the presumption arises and remains unrebutted, then Deutsche Bank's mortgage was always valid and enforceable under **Wykle**.

We dismiss Deutsche Bank's remaining appellate issues as not yet ripe for review. If the trial court finds in favor of Deutsche Bank on the entireties presumption, the appellate roles of the parties will flip in any future appeal. Hence, we leave the job of fact finding to the trial court, who heard the

witnesses testify and who is the only competent judge of credibility.[5]  ***See***

***K.B.***, ***supra***.

Judgment vacated.  Order denying post-trial relief partially reversed; new trial granted on counts of declaratory judgment and quiet title.  Case remanded for further proceedings consistent with this decision.

Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 5/14/2025

---

[5] If the trial court wishes, it may, in its discretion, hold another non-jury trial on remand.  Otherwise, it may decide the counts for declaratory judgment and quiet title based on the transcript and its recollection of the witnesses' credibility.